If every time a capital habeas petitioner raises any claim of ineffective assistance of counsel, no matter how circumscribed, are his trial counsel's files then fair game for discovery without limits? The lower court's answer was without any real analysis, yes. This answer is contrary to law. In ordinary civil litigation, Rule 26 limits discovery to those matters which are relevant and unprivileged. Rule 26 further limits discovery to matters for which the person seeking discovery can choke a cause and requires the court to create thereafter a circumscribed, delineated, narrow, and relevant order. Relevance is itself a limitation. Relevance in the context of the disclosure of privileged materials particularly requires a showing that this material is vital to the defense. How do you claim that? In what context is your ineffective assistance of counsel claim? I take your ineffective assistance of counsel claim to embrace the question of mitigating factors, potential, whether or not, for example, mental health and other factors were involved. Does that embrace the claim? How would you describe your claim? You said it's a narrowly circumscribed, ineffective assistance of counsel claim. And I've looked at the complaint, and it seems a bit less circumscribed to me. But why don't you describe to me how you think that the attorney ineffectively assisted his counsel in this case? Okay. Well, I'll give you an example. It would be the mental health claim. In that claim, we contended that – I'm just going to write it out of my head. Well, let's just take that for an example. Okay. Well, why shouldn't the government be able to determine whether or not trial counsel contacted mental health experts and the content of that communication? If your claim is that trial counsel failed to do that, why can't the government – why shouldn't the district court allow the government to see your material? Okay. Yes. Well, in the privilege log, obviously, they're informed that the trial counsel did contact mental health people. Yes. And the district court ordered you to produce it. So tell me why you shouldn't have to produce that material. Because the claim itself – now, it's been a long time since I looked at the petition. The claim itself simulated no competent mental health professional would have made an evaluation without creating a – or without investigating a complete social history, or on the basis only of the client's self-history. That, to me, is a fairly circumscribed claim. That's not – you know, counsel didn't do anything about investigating a mental health offense. That is one – that is one – that's one issue on – and I think that's a circumscribed issue. The decision to put the client on the stand without an interpreter and without proper preparation, that's very – Well, let me take this one, for example. Okay. This is out of your petition. Trial counsel failed to properly investigate and obtain expert advice on the issue of Mr. Alvarez's heavy use of crack cocaine's effect on ability to perform specific intent. Okay? Okay. Why shouldn't the government be able to find out what the trial counsel did with respect to obtaining expert evidence? In your privilege log, you just say contact with experts. It's privileged. The government can't find it. Now, if you – in fact, he had contacted an expert on this very topic, that would be highly relevant to the defense of the claim. Yeah. How do you – from your privilege log, I can't tell what you're – on the basis, except it says it's a work product. Well, then perhaps the need is to do the privilege log better, do it again, do it better, or have in-camera discussions and review of these matters because we're saying trial counsel did not contact an expert. Right, but how is the government to know that? How is the government to know that when you have multiple communications with a number of experts? The respondent asked trial counsel, and trial counsel said he decided not to do it. I don't think that quite got to my question, though. I mean, you have – you've – I mean, I take your point that these things have to be narrowly circumscribed. Now, Bedeker goes farther. He says you start with the presumption that there is a discovery allowed and that then it must be tailored. And it looks to me that's what the magistrate judge did in this case. He looked at your privilege log, he looked at the allegations, and then he fashioned an order that said, okay, you have to disclose these things. Right. At first glance, the magistrate judge's order does look reasoned, and I understand what you're saying. It does look – it does look more narrowly circumscribed than it is. In one sentence, he says all matters relevant to these issues, and in the second sentence, he basically gives up all of the strategic and investigative materials that we gathered with regard – or that were gathered, you know, with regard to any of the ineffective assistance of counsel claims. All we're saying is that what we need to do – and it's all too common for courts to do this. They forget that there is some limit. Once you raise a claim of ineffective assistance of counsel, essentially the court says, well, trial – because everything effectively, potentially, is part of what went into making trial counsel's strategic decisions. And so, therefore, why shouldn't we look at all of trial counsel's files and therefore will know exactly what he knew and on that basis made his decisions, or didn't know, or didn't bother to investigate? What were his omissions? And in this case, which is, you know, I think relatively unusual in my experiences, they have trial counsel saying, I know why I did this. This is why I did this. These are the decisions that I made. And if they want to impeach him with his records, they can't have access to it? That's a matter for when we're coming up to an evidentiary hearing, I suppose. I mean, if I don't assume that he does have access to his own files and records. What I got, a lot of what I got apparently are copies. And so he doesn't say he doesn't have access. He just says, oh, I can't. But whether he has access doesn't answer the question of whether the state can impeach him. I mean, he presumably might have access because he has originals, but he can't turn them over to the state. So are you saying the state is required to take the say-so of this lawyer as to what happened without being able to explore, without being able to do what you could do to explore as to whether he was accurately recalling what happened years before? But why would they want to impeach him? I mean, he's their witness. Somebody can be your witness, but not be your witness on points you want them to be your witness on. So you mean, in other words, in order to prepare him. And when he gets on the stand, if he goes sideways on you, you can effectively. Something like this. I mean, you say on cross-examination, you didn't investigate or obtain expert advice on the issue of his use of crack cocaine, did you? And he says no. And then the state says, well, wait a minute, here are four experts you contacted. Oh, yeah. Oh, I see. Yeah, yeah. And it seems to me what you're denying, with the blanket privilege you're asserting, because all it says is expert communication, I can't tell from the privilege log what the experts were supposed to be hired for. I mean, that's a practical problem, I see, what you're talking about. Because you seem to be arguing for a different rule, which is that they get nothing from the record. What do you think they're entitled to out of this record? Well, again, there are 400 documents on that privilege log. In a great many of those documents, we said we're not relevant. And I think that the question of relevance, perhaps it is something that needs to be decided in camera, but on a document-by-document basis. But that's not what the court did. Before going through the documents and reviewing them and seeing if the privilege should be waived, was waived, should be waived, should be, was vital to their defense, he just said to it. Oh, he acted on the privilege log you gave him. Yeah. What else is he supposed to do? I mean, he did pick out some for in camera, but if you give an explanation, he says, that's not enough to have me take it off the table. How can we fault him for that? There's not much point in the list if the judge has to go through every document, document-by-document. Well, okay. You know, that's true, and I wouldn't certainly want to dump 400 documents on his. In camera inspections are quite unpopular with district court judges. Well, as a matter of fact, I'm quite aware of that. But the point is, you know, once you've given them up, and, again, if the fault is with the privilege log, then that's not an issue that's really here right now. And I suppose respondents could and should have objected to it at the time and said it wasn't sufficiently detailed. They couldn't figure out what there was so that they could then make their requisite showing as to why they needed these documents. I know there's always a fine line in preparing a privilege log and reviewing a privilege log that if you give it all away in the privilege log, then there's no more point in asserting the privilege. On the other hand, you do have to give enough information that someone reviewing it will know what you're talking about. And if the problem was that the privilege log was not sufficient for them to know what it was that we were claiming the privilege as to, then that was the point at which the burden, I believe, would have been on them to assert that that was inadequate. And we could have gone back and straightened it out, and we wouldn't be here now arguing on this, hopefully. Or if we did, it would be a narrower argument. But... So... You don't have to use all your time. Okay. Thank you. If I have some rebuttal, I can take that. Thank you. You may. May it please the Court. My name is Laura Simpson, and I represent the appellee, Gene Woodford, who was the respondent below. Petitioner has primarily talked today about the substance of the trial court's ruling. I've also raised a jurisdictional argument, but I'll first respond to the arguments raised by counsel. The trial court below, or the magistrate judge ruling, is a carefully crafted order. He considered over 400 documents. He went through them item by item. He compared that to the numerous claims of ineffectiveness of counsel that had been raised, and based upon that analysis, determined whether these documents might have some tendency to either support or refute an ineffective assistance of counsel claim. And the standard for showing or approving or disproving an ineffective assistance of counsel claim is a broad showing. You need to show that the decisions made by the trial counsel fell below an objective threshold as measured by prevailing professional norms, and also that there was prejudice. And here, just taking, for example, the documents dealing with the mental health, we need to look at those documents so that we can determine whether the strategic decision that was provided by counsel below, whether that was reasonable. What information did he have that may or may not have supported a defense? If there was nothing in there, then it would obviously be reasonable. If there was something in there, but maybe it wasn't enough when compared to other defenses, we need to be able to look at that and evaluate. That goes not only to reasonableness, but also to prejudice. Also, there were two attorneys. Have you taken the deposition of the counsel in this case? We have not. I gather he's been characterized as a cooperating witness. Is that accurate? I don't know if I would go that far. There were two attorneys who represented the petitioner at trial. One was contacted many years ago, well, a few years ago, when we prepared the answer in this case, and he provided a declaration. I did not personally speak with him. And in that declaration, he did point out several instances where he was basing his response solely based upon his recollection, without review of the records, didn't indicate whether he had those records or not. The other trial counsel has refused to cooperate with our office and has not communicated with us. There were over 400 documents, and as I indicated, the trial court went through those document by document. He ultimately declined to order any production as to 78 documents. And for 39 documents, because he found that the description was inadequate to determine if it was relevant, he ordered that those be produced in camera. I don't think that you can characterize this type of ruling as a broad waiver where everything in counsel's files is ordered to be produced. Instead, it was based upon the nature of the claims. And these claims were wide-ranging. They attacked all different stages of trial counsel's performance from the investigation before trial ever commenced, through trial, including what types of defenses were raised, what strategic decisions were raised, both at the guilt and the penalty phase. And because of the wide range of circumstance that must be considered in an ineffectiveness of counsel claim, a great many of these documents are going to be relevant. And I submit that the trial court applied the proper standard. I've also raised a jurisdictional argument. I'm not sure if this Court has any particular questions. In our argument, we submit that the Collateral Order Doctrine does not apply in this instance. It doesn't fit within the Collateral Order Doctrine as it currently exists. And we submit that to extend the Collateral Order Doctrine to include pretrial discovery orders where a claim of privilege is involved would, number one, violate U.S. Constitution or United States Supreme Court precedent in Ryan, where the Supreme Court directed parties that if they were confronted with such an order, that they must either comply or they must decline and they can appeal the sanctions order. Also, this circuit, in prior precedent in Admiral and in Amlani, has both declined to find Collateral Order Doctrine jurisdiction for this type of a pretrial order. I take your point on that, and it may be somewhat of a close question, but I must say most of the time it's the state who tries to invoke the Collateral Order Doctrine and comes up here on a denial of discovery. So you might be careful what you wish for. I know that we have sought review for protective orders. I submit that this is a different case. Well, not in the sense, though, because they do face, then, they have to make the choice of risking a contempt citation or producing it and have no effective review of production. That's it, isn't it? Well, there is the other option, which is the option this Court seems to have applied in Amlani and also in Admiral, which is to take a writ. And a writ is a much more preferable method of attempting to seek review. The greatest benefit is that it's conducted on an expedited nature. Right now we've had a stall in the court below of over a year, or approximately a year, because of this appeal. And perhaps had this been taken by a writ where this court first does an initial screening before any response is ordered from respondent, perhaps we would be back already in the court below. So if we grant your request and say we have no jurisdiction, then I guess they pursue their writ, which puts you back further, right? It would. Well, and as appellant has indicated, there is case law for this court to treat a notice of appeal as a writ. Our concern with that is the precedent that it might set in the future, because as I've indicated, we've had a stall below of approximately a year. And the Federal Rules of Appellate Procedure 21 have very specific guidelines as to what the petitioner must do in order to obtain a writ. And it's conducted on an expedited nature. If this court were to grant jurisdiction under the writs doctrine, our fear and our concern would be it would encourage petitioners in the future who are seeking a delay in a stall of the proceedings below to simply file a notice of appeal and then belatedly ask this court to treat it as a writ. And that's our concern with that. If there are no further questions on anything in particular, I'm prepared to submit. There don't appear to be any.  Thank you very much. I think just briefly on the jurisdictional issue, I mean, Binniker, I think, pretty much resolves that. This order meets the Cohen test. It's a final order. It's an important issue. It's separate from the merits. And there's a threat of irremediable harm. Obviously, if privileged material is disclosed, the bird will be out of the cage and you will never lure it back. I think Binniker resolves that such orders in habeas cases to disclose privileged materials are appropriate for review and considerations of inconvenience to the parties and judicial inefficiency and the danger of denying justice by delay. This delay, which we were just speaking of, is, of course, an example, but I would like to say that that delay was not primarily caused by this appeal. As the court did not stay the proceedings pending this appeal, it was caused by my illness. Unfortunately, I was out for most of a year. So I don't think that there's any particular, because of the unique circumstances of this delay, I don't think there's any presidential danger in considering this as a 1291 appeal. It's much more dangerous to use the All Writs Act, which is a very, I always think of it as a big canon that you bring in when nothing else will do. And I don't think we need to use it when we have a statute that permits us to bring the appeal. And that's all. Thank you. Thank you. Case disargued is submitted for decision. That concludes the court's calendar for this morning, and the court stands adjourned. This court is adjourned.
judges: Schroeder, Thomas, Clifton